IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JUSTIN KOKEH, and VICTORIA KOKEH, | ) | Case No. 4:25-cv-00062-SMR-HCA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER ON MOTION TO REMAND |
| v. | ) | |
| | ) | |
| UNITED STATES CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES, TODD | ) | |
| BLANCHE, Acting Attorney General of the | ) | |
| United States, MARKWAYNE MULLIN, | ) | |
| Secretary of the United States Department of | ) | |
| Homeland Security, JOSEPH EDLOW, | ) | |
| Director of United States Citizenship and | ) | |
| Immigration Services, and XIAN WANG, | ) | |
| Des Moines Field Office Director, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs Justin and Victoria Kokeh filed a complaint seeking an order compelling Defendant United States Citizenship and Immigration Services ("USCIS") to adjudicate their N-400 Applications for Naturalization. [ECF No. 8 ¶ 1] (sealed). The Kokehs now move for summary judgment and ask the Court to set the matter for a naturalization hearing. [ECF No. 42] (sealed). Defendants resist and move to remand the matter to USCIS. [ECF No. 41] (sealed). For the reasons that follow, Defendants' motion to remand is GRANTED. *Id.*

## I.    BACKGROUND

The facts are largely undisputed. The Kokehs are natives of Liberia. [ECF No. 8 ¶¶ 5, 6]. In 2013, they applied for admission to the United States through the Diversity Visa program. [ECF No. 42-3 at 7]. On their application, they wrote "N/A" when asked to "List Names, Dates and Places of Birth, and Addresses of ALL Children." *Id.* at 8. They affirmed that they did not have

children during consular interviews. [ECF No. 52-1 at 3–4]. The Kokehs' application for admission was approved, and they were granted permanent resident status and admitted to the United States in April 2014. *See id.*

In early 2020, the Kokehs filed N-400 Applications for Naturalization. [ECF No. 8 ¶¶ 12, 16]. There, the Kokehs indicated that they had multiple children in Liberia born prior to their immigration to the United States. USCIS conducted naturalization interviews of the Kokehs in August and October 2020. *Id.* ¶¶ 15, 19. They admitted that they did not identify their children on their Diversity Visa applications because they heard a rumor it would lead to the denial of their applications and because an unidentified individual at the Diversity Visa lottery office told them not to list their children. [ECF No. 52-1 at 3–4]. Nonetheless, the Kokehs listed the children on their N-400 applications because they want those children to come to America as well. *Id.* at 4.

Over five years later, USCIS has still not adjudicated the Kokehs' naturalization applications. In such a circumstance, 8 U.S.C. § 1447(b) permits applicants to seek a judicial remedy. The Kokehs availed themselves to this statutory provision. They filed a complaint requesting the Court "order USCIS to adjudicate their applications or compel Defendants to act and perform their duties." [ECF Nos. 1, 8].

Defendants moved to dismiss after removal proceedings were allegedly initiated. [ECF No. 11] (sealed). Justin Kokeh's removal proceedings were terminated after the immigration court concluded that the Government failed to meet its burden in proving that the omission of his children on the Diversity Visa application was material. [ECF No. 41-4 at 12–13]. Defendants withdrew their motion to dismiss following the termination of Justin Kokeh's removal proceedings and "based upon consideration of the issues raised by Plaintiffs regarding the status of Victoria Kokeh's removal proceedings." [ECF No. 26] (sealed).

In November 2025, USCIS sent the Kokehs a Notice of Intent to Deny their naturalization applications. [ECF Nos. 41-2, 41-3]. The notice cited the Kokehs' failure to identify their children on their Diversity Visa applications. But it also gave them a chance to respond. USCIS invited the Kokehs to explain the omission; to show good moral character, eligibility for the Diversity Visa program, and continued parental support of their children; and to submit any additional documentation demonstrating the omission was not willful or fraudulent. [ECF Nos. 41-2 at 2; 41-3 at 2]. The Kokehs responded with evidence relating to these requests, arguing that they were eligible for naturalization and that the immigration court previously concluded that the omission was not a material misrepresentation. [ECF Nos. 41-4, 41-5].

On April 30, 2026, Defendants moved to remand the adjudication of the Kokehs' naturalization applications to USCIS. [ECF No. 41]. They argue that remand would permit USCIS to fulfill its statutory duty, use its institutional expertise, preserve judicial resources, and provide the most efficient path to adjudication. *Id.* at 1–2. Defendants also represent that USCIS is prepared to rule on the applications within 30 days. *Id.* at 2.

The Kokehs resist. [ECF No. 48 ¶ 5]. They argue that Defendants seek remand to deny their naturalization applications, and granting the remand motion would only force the Kokehs "to endure the administrative rigmarole" before eventually returning to the Court. [ECF Nos. 48-1 at 5]. The Kokehs also contend that efficiency favors judicial resolution. *Id.* at 6–12. Additionally, they move for summary judgment arguing that *res judicata* prevents Defendants from relitigating their eligibility for naturalization. [ECF No. 42].

## II.    LEGAL STANDARDS

Section 1447(b) affords the Court exclusive jurisdiction over naturalization applications once an applicant files a lawsuit. *Haroun v. U.S. Dep't of Homeland Sec.*, 929 F.3d 1007, 1011–

12 (8th Cir. 2019). The statute creates a "Congressionally-authorized oversight function of the naturalization application process" under which the Court has two options: (1) adjudicate the application in the first instance or (2) remand to USCIS with instructions. *Grey v. Cissna*, 413 F. Supp. 3d 466, 472 (D.S.C. 2019) (citation omitted); *see also Haroun*, 929 F.3d at 1012.

As a general rule, courts "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002). That principle applies with particular force in the context of immigration. *Id.* at 16–17. Our nation's immigration laws are vast and complex, often demanding expertise beyond ordinary judicial familiarity. *Adegbesote v. Swanson*, Civil No. 24-cv-969 (JRT/SGE), 2024 WL 4894790, at *2 (D. Minn. Nov. 26, 2024). As such, courts regularly afford substantial deference to the Executive Branch on the subject. *See Lopez-Cortaza v. Sessions*, 739 F. App'x 855, 859 (8th Cir. 2018) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999)). That remains true even after the death of *Chevron* deference. *See, e.g.*, *Adegbesote*, 2024 WL 4894790, at *2; *Sanchez v. USCIS*, CIVIL ACTION No. 5:25-cv-93, 2025 WL 3214785, at *4 (S.D. Tex. Nov. 18, 2025).

### III.    ANALYSIS

The Kokehs present a Schrodinger's cat-like argument, simultaneously seeking and disavowing remand. Their stated purpose for filing this lawsuit was to obtain a Court order "compelling USCIS to adjudicate their N-400 Applications for Naturalizations." [ECF No. 8 ¶ 1]. They asked the Court to order "USCIS to adjudicate their applications or compel Defendants to act and perform their duties." *Id.* ¶ 39. It mattered little whether the decision came from the Court or USCIS, so long adjudication was prompt. *See id.* ¶¶ 27–39. Now, after USCIS has declared that it is prepared to adjudicate the naturalization applications within 30 days, the Kokehs claim

that remand is "not appropriate given the circumstances and posture." [ECF No. 48 ¶ 5]. The Kokehs cannot have it both ways.

The Court agrees with Defendants that remand will allow USCIS to use its expertise in considering the applications in the first instance, while preserving judicial review if the proceedings result in an unfavorable outcome for the Kokehs. [ECF No. 41-1 at 5–7]; *see also Orlando Ventura*, 537 U.S. at 16–17. However, the Court is not as easily persuaded by Defendants' efficiency argument. It too could set a hearing and adjudicate the applications within 30 days. But efficiency cannot be the Court's primary concern. A proper application of the law must predominate. Remand best serves that end.

The Kokehs' contrary arguments ring hollow. Although USCIS has issued a Notice of Intent to Deny their applications, they have been provided a fair chance to respond. [ECF Nos. 41-2, 41-3]. They have thoroughly done so. [ECF No. 41-4, 41-5]. Should the Kokehs' applications be denied, they will have an opportunity to present their arguments to an immigration officer. 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2. And if their applications are again denied, they may seek a judicial remedy where the Court will have a more fulsome record to conduct its *de novo* judicial review. *See* 8 U.S.C. § 1421(c); 8 C.F.R. § 336.9(c). The Court would greatly benefit from this process, as would the Kokehs who would be afforded multiple opportunities to present their case. *See Orlando Ventura*, 537 U.S. at 16–17; *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 844 (E.D. Mich. 2006).

This is a statutorily created process that falls squarely within USCIS's immigration expertise. *See Imran v. Keisler*, 516 F. Supp. 2d 967, 971 (S.D. Iowa 2007) (remanding to USCIS because it is "in the best position" to adjudicate naturalization applications due to its "extensive knowledge and experience"). Such acts of Congress are not a "rigmarole" or waste—they are

designed to protect the Kokehs—and arguments to that effect overlook USCIS's proficiency on the topic, administrative capabilities to adequately resolve the matter, and the benefit additional administrative proceedings would have on future judicial review. [ECF No. 48-1 at 7]. Even accepting that the Court will eventually decide the merits of their applications, it would be far better positioned to do so after final agency action. *Id.* at 6.

The Kokehs' resistance also presumes that the Court's duty is to ensure their applications are granted. *See id.* at 7. Not so. The Court's duty is to faithfully apply the law, wherever it may lead. The remand motion does not require the Court to opine on the merits of this case. It poses a discretionary question regarding which forum is best suited to adjudicate their applications in the first instance. Whether USCIS intends to deny the applications—or how USCIS may have informally resolved other matters—has no bearing on that question. *See id.* at 6.

The Kokehs' arguments also overlook their culpability in creating the situation they now face. It is unlikely these proceedings would have been necessary had the Kokehs not omitted their children from their Diversity Visa applications or denied having them under oath.[1] Mrs. Kokeh's effort to blame an official at the Diversity Visa office does not erase Mr. Kokeh's sworn statement that the children were not disclosed due to a rumor that their application would be denied if they had children. [ECF Nos. 52-1 at 3, 4].

This conclusion should not be read to condone USCIS's delay in adjudicating the applications. A five-year delay is unacceptable. Even if USCIS ultimately denies the applications, the dilatory nature of USCIS's conduct has held the Kokehs in limbo for far too long as they

---

[1] In support of their motion for summary judgment, the Kokehs attempt to distinguish between their use of "N/A" rather than "0" or "none." [ECF No. 57 at 10] (sealed). The Court does not consider the merits of such an argument in evaluating Defendants' motion to remand. The relevant point is that the Kokehs did not identify their children on the applications.

navigate a difficult situation. The delay is especially troubling because recent immigration cases offer no shortage of examples where the Government has failed to fulfill its statutory duties.

Nevertheless, remand with instructions can cure this problem and the Court is convinced USCIS will promptly adjudicate the naturalization applications—just as the Kokehs originally requested. *See Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 810 (E.D. Va. 2007) (stating that "the vast majority of courts" remand to USCIS with instructions); *Sanchez*, 2025 WL 3214785, at *3–4 (remanding despite "egregiously lengthy" 1,144-day delay). USCIS has handled the paperwork, interviews, and proceedings to this point, and it remains in the best position to adjudicate the applications at this time. *Reddy v. Mueller*, 551 F. Supp. 2d 952, 953 (N.D. Cal. 2008). However, should USCIS's 30-day timeline prove false, the Court will not hesitate to resolve the matter.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to remand is GRANTED. [ECF No. 41]. The Kokehs' motion for summary judgment is DENIED as MOOT. [ECF No. 42]. USCIS is ordered to adjudicate the Kokeh's N-400 Applications for Naturalization within 30 days. Defendants shall promptly notify the Court once they have complied with this Order. Judgment will enter at that time. If USCIS fails to adjudicate the applications within 30 days, the Kokehs may seek expedited relief with the Court. The Court expresses no opinion on the merits of the naturalization question at this time.

IT IS SO ORDERED.

Dated this 25th day of June, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT